HONEYWELL, S.A. HONEYWELL, S.A. Good morning, Your Honor. A central question at the trial of this case was whether the 192 patent discloses the continuous removal of 245 and HCL. When prosecuting their own patent for a process for continuous removal of 245, Honeywell repeatedly told the Patent Office that the 192 patent does not disclose continuous removal of 245 and, in fact, that it teaches away from the very Solvay patent at issue in this case. The district judge precluded the jury from learning about these directly contradictory statements that Honeywell took when prosecuting its own patent, directly contradictory to the anticipation and obviousness arguments that it made at trial. District courts have discretion on evidentiary issues, but there are limits to that discretion, and here that discretion was abused. The district court erred in excluding this highly relevant evidence, and it requires reversal of the anticipation and obviousness verdicts. The district court erred in a second way in resolving the 102G issue that the court resolved on summary judgment. The issue before the court was whether the Russian scientists, who admittedly did nothing in this country, conceived and reduced to practice entirely in Russia, should be deemed under 102G to be another inventor who made an invention in this country prior to the invention by Solvay. The law is whether the subject matter is present in the United States. Is it not? I don't believe that's correct for reduction to practice, Your Honor. The question on reduction to practice is if the inventor themselves reduces to practice in the United States, and of course, that's a reduction to practice. If a third party or someone other than the inventor does it, then the legal question is whether the third party's actions were on behalf of or at the request of the inventor. And here in this case, what we essentially have is the argument that because Honeywell duplicated the process in the United States, that should count as if the Russians did it. Is that almost on all fours with our Homewood case, though, that made a similar finding? No, I think that there's a critical distinction in Homewood. In Homewood, the foreign inventor conceived and did some testing in Germany. His assignee sent the compound to the assignee's United States affiliate, who did further testing in furtherance of the inventor's invention, and then a patent application was filed in the United States on behalf of the German inventor. In this case, Honeywell did not file a patent application on behalf of the Russian scientists. In fact, when they filed a patent application over a year later, they didn't name the Russian scientists at all. So what you have in Homewood is a situation where the work done in the United States was for the benefit of the foreign inventor, and the foreign inventor filed a patent application, and that's the usual run of this court's inermit cases. What does filing the patent application have to do with it? I mean, even though there's no filing of a patent application, you can still have a problem here because of the foreign invention and the reduction of practice in the United States, right? Well, no, Your Honor. The key to the filing of the patent application is that is an indication that the testing done by the third party in the United States was on behalf of the foreign inventor. Really? Did Homewood say that? Well, the issue in Homewood was not the standard for inermit, but the evidentiary standard for whether the testing in the U.S. was admissible or not. But this court has other cases under 102G, the prior version of the statute, and the current version of the statute, saying that the question is if the reduction to practice in this country is done by someone other than the inventor, the question is was the reduction to practice done on behalf of the inventor or for their benefit? What does the filing of the application have to do with that? The filing? What cases said that the filing of the application bears on that question? The filing of the application is evidence that the work done in the United States was not independently done. Does any case say that? Does any case say that? You say that, but does any case say that? There is no case that goes off on that finding, but those are the facts of a number of cases under 102G. And what I'll point out, Your Honor, this was decided on summary judgment. The fact that the work done in the United States was by Honeywell, and there is no evidence in the record that it was on behalf of the Russian scientist, which is evident by the fact that Honeywell filed an application for their own benefit, not for the benefit of the scientist, certainly raises a fact question. Doesn't the record show rather clearly that these entities, although one's in Russia and the other's in the U.S., are collaborating? They were collaborating. They were collaborating. And the Russians are begging them to verify the results. I don't think there's any evidence that there's any begging by the Russians to verify the results. In fact, there's no evidence in the record. They're working together and they send them over. How would one view it other than here's what we've found. We wish to see if you have the same. Well, but Your Honor, critical to that is there's no evidence in the record that Honeywell communicated back to the Russians the result of their testing. I think fairly read what the record shows is that the Russians were working on behalf of Honeywell, did a project for them, and sent them a report. I think that's clear. But the critical question under 102G is whether Honeywell was working on behalf of the Russians because the reduction to practice in the United States was not by the Russians. It was by Honeywell. Why does that matter? That's what I'd like to understand. If the work is done in the United States, well, why does it matter where it originated? Well, it doesn't matter where it originated. It matters whether it was made by another inventor in the United States. And this court held the previous time this case came up on appeal that Honeywell does not qualify as another inventor under 102G here because they did not conceive of this process. They simply duplicated the process that the Russians had conceived of. And so the only question on remand for the district court and before us today is whether the work that Honeywell did in the United States does not count as invention by another in this country if it was just Honeywell's work. It can only count if it was deemed to be the Russians' work. And that's our point on appeal is that there was not evidence in the summary judgment record, certainly not undisputed evidence, to show that the work done in the United States was on behalf of or at the request of the Russians. And I think the critical distinction that you're on... Help me to understand what difference it makes. Sure. It makes a difference because the statute requires that the invention... What statute? 35 U.S.C. Section 102G requires that the invention be made in this country by another inventor. 102G relates to priority of competing inventors. It does relate. It does relate to that. And it's been split into two sections, one now relating to interferences and one separate from interferences, and it previously was a single statute. You're saying that the Russians were in competition with the entity that employed them? I'm not saying they were in competition with the entity that employed them. I'm saying that under the statute, it's not sufficient that the Russians did the work because the Russians were in Russia, and it's not sufficient that Honeywell copied the Russians' process in the United States because Honeywell is not another inventor. But what the statute requires is that the Russians reduce to practice in the United States. And this is... Where does the statute require that? Well, the statute requires it by requiring that the invention be made in this country by another inventor. I mean, this court has drawn a distinction... It requires that if you're claiming priority of work, it has to be the work done in the United States. It doesn't say that you can't retain some foreign expert on a consultancy basis or whatever it is, sponsored research. It does not say that you can't retain someone, but what the statute does say is if the work by those third parties that you've retained is to count under 102G, then the invention the third party makes has to be made in this country. Our inormant doctrine is meant to determine whether the reduction to practice of one person inures to the benefit of another. In this case, whether the reduction to practice by Honeywell inures to the benefit of the Russians. How can that be in question when they're collaborating so completely? They're working together. They're on the same project. They're... I'm trying to figure out why you would resist what the record shows so completely that they're working together. Clearly the record does show that, Your Honor, but there's a directionality aspect to this that is critical because this court in the prior appeal of this case held that Honeywell could not be another inventor under 102G for these purposes. No, the work of Honeywell inured to the benefit of the Russians because they were working together. And what I'm saying, Your Honor, I understand that point completely. What I'm saying, Your Honor, is that that is not a statement of the legal standard that this court has applied in determining when a third party's reduction to practice inures to the benefit of... Except we have Homewood where we've done that already once. And you're saying, well, but they didn't file a patent application. And I think I hear myself thinking what Judge Dyke said, which is, what does that have to do with enormous, whether the acts of one benefit the other? And I think that the reason that's significant, Your Honor, is because under the facts of Homewood, the work done in the United States was on behalf of the foreign inventor. And the totality of the facts, including the fact that the patent application that got filed following the testing was in the name of the foreign inventor, evidenced that. And it was additional evidence, but in this case, we don't need additional evidence. We've got all this collaboration, right? But what you have... No, Your Honor, because what you have here is evidence in a collaboration that perhaps the Russians were working on behalf of Honeywell. So the argument there would be, well, what the Russians did should inure to Honeywell's benefit. But that doesn't get you to the statute. If you strip out the filing of the application from Homewood, is there any other difference between Homewood in this case? Well, I mean, legally, Homewood didn't address the question of what the legal standard was. Homewood assumed that the work in the United States would inure to the benefit of the foreign inventor. And I do think there is a difference in the facts of this case, because in Homewood, what the court took as a given was that the work in the United States was for the foreign inventor. And so it made sense to say that the foreign inventor's invention was made in this country. In this situation, what we have here is that we have the converse. We have a record that, Your Honor, Judge Rader is correct, fairly reads that the work in Russia was on behalf of Honeywell. But there isn't what is needed for the statute, which is that the work that Honeywell did in the United States was for the benefit of the Russians. I would like to reserve some time for rebuttal, unless Your Honors have further questions. We can reserve the rest of your time. Thank you, Mr. Perlman. Mr. Locascio. May it please the Court. Homewood does address this issue, but let me go further than that, because I think the questions from the panel are clear that Homewood goes to this, and the argument Salve makes in response is, well, this directionality is unique, and we ought to depart from Homewood because of the directionality. There's one other case that both Judge Robinson looked at below that we rely on our briefs, the Inret Brewer case. And in the Brewer, actually, the directionality was reversed. So both Homewood and Brewer involve German entities, and the conception and the original reduction of practices in Germany. And then it is shipped to the United States and tested here. In Homewood, the U.S. testing company is an affiliate of the German Assany. In Brewer, it is reversed. In Brewer, it is a German subsidiary. It is Chemische Fabrique von Hayden, and they are the subsidiary of the U.S. company in that case, which then was the Assany. So the benefit, this argument that the benefit is directional, isn't in the law and actually is not just squarely addressed by Homewood, but by Brewer, where the directionality would be reversed. The U.S. company that tested it, that introduced it to the U.S. and practiced it here, it was for their benefit, not for the inventor and the Germans. With respect to 102G, there was also suggestion there's a factual issue here, that this was a fact issue in dispute as to the level of control. That's not the case. This court heard this once before, and it was on undisputed facts. Those undisputed facts make clear. The Honeywell to contract with the RSCAC, the so-called Russians, as they're called, that contract was to develop this process. There was a statement of work. These are in the record at A7532 and 7541, that Honeywell ultimately would be the owner of that work, of any patent that came of that, and particularly, that Honeywell followed the RSCAC's instructions. So there's some suggestion by Salva that, well, they weren't giving direction. They prepared the instructions on how to perform the process. Honeywell followed those instructions. At A5742, that wasn't even in dispute at the first appeal. Both Salva agreed to that and said so in their brief. So the suggestion that there's now a fact issue, that the judge erred because this was summary judgment, isn't the case. And moreover, the briefing below, that was never addressed. It was a legal question of 102G, looking at Holmwood and Brewer. Salva's position was those cases don't apply because this was G2 post-split, and those cases had been before the statute had been separated into two. So questions on 102G2, I can address those. But otherwise, given that Salva also argued the 403 issue at the outset, let me just address that briefly. Under 403, this is a case that had been up before. There were 41, I believe, motions to eliminate Judge Robinson was looking at. There were two on each side that related to two different sets of statements made or experienced at the Patent Office. And with respect to that, Judge Robinson used her discretion, balanced what she deemed marginal relevance versus a significant collection of prejudice, waste of time, additional witnesses that would need to come in to explain away the statements that Salva now points to. Your retraction at the PTO comes only after this litigation is underway. It seems to be very litigation-driven. That point was certainly made below, and let me address both the reaction Your Honor had to that question and then how Judge Robinson treated it. First of all, Honeywell's knowledge of that the statements were even made came when they were alerted to this by Salva. And, yes, that was during the litigation. We make no bones about that. They had a patent attorney who made these statements. As soon as Honeywell found out about that, they went to the Patent Office. They said, We retract those statements. They gave the patent back. And given how it had been argued below, it was clear, and the argument on the motion eliminated, Judge Robinson, was now what will have to happen in balancing out this subjective assessment of the objective question of what does the 192 patent actually disclose or teach to one of skill and the art, was we'd have to call the prosecuting attorney, which they intended to do. We would call the Honeywell employees who found out about it, that it was disclaimed, and what the court ultimately balanced and decided was this would be essentially a trial and a trial of having to explain a separate case. And what happened in that, the court would say, You have to look at the claims. The argument was made, Well, those claims are different. So you at least have to look at why the examiner or the applicant was saying that. And then conversely, if the standard was such, as Salva contends now that that should come in, to explain that away, Honeywell would have introduced, and Salva sought to keep out, a similar patent application where the examiner said the 192 Vanderpuy patent renders these same exact claims obvious. And so balancing that in her discretion, the judge kept both out. Certainly, each piece of evidence is looked at on its own, but on this particular instance, these statements made by Honeywell, the court looked at those, found on a 403 balancing that they were not relevant enough to overcome that prejudice, and it's not any abuse of discretion by the court. Notably, there's no argument on any of the three grounds, anticipation, obviousness, or 102G, that there's not substantial evidence to support this verdict because the 192 patent says on its face that it could be performed in a continuous manner. There was another reference, a Laveron reference, taking a fluorination reaction from batch to continuous. The MPP and others, and both experts acknowledged, you start at the bench with a batch, and you make it continuous. Can you give me the site on that Brewer case that you mentioned earlier? 558 F2nd. 558. I have the pinned sites of 24 and 28. The actual site for Brewer is, it starts on page 22, John. Lastly, it wasn't argued by Salve, but there's not a claim construction issue here. There are three separate grounds for invalidity, and even under the claim construction argument, it wouldn't go to 102G. Obviously, the 102G argument Salve makes doesn't render a different result here. There are three grounds, and neither the 403 issue nor the 102G issue really go to obviousness because obviousness had an additional reference in addition to the 192 patent. And so there's no argument that there was not substantial evidence that, under the 192 patent plus the Laveron reference, 192 certainly teaches the chemistry of the reaction. It has an example that does it in a batch, but it speaks to, in the specification itself, performing it in a continuous manner. The Laveron reference takes multiple fluorination reactions from batch to continuous. And both experts spoke to that. The jury made a decision on obviousness in light of that. Any other questions? All right. Thank you, Mr. Lucasio. Mr. Perlman. You have three minutes. Thank you, Your Honor. Mr. Perlman, the inconsistent statements have nothing to do with the 102G issue, right? They go to anticipation and obviousness. That's correct. But they have nothing to do with 102G. That's correct. The 403 issue does not go to 102G. The Markman issue respectfully does go to 102G, and I won't belabor it, but the reason is the Markman error lowered the bar as to what Honeywell had to prove was contained in the Russian patent. On the isolating point. Correct. But I don't see that you ever asked the judge to amend the claim construction of isolating. Well, it came up, I'll grant you, in an atypical posture, where both sides believed that the plain meaning of the construction she had entered was their view. I've read it, but you didn't ask him to change his claim construction, right? We did not ask for different wording in the construction, but there was elaborate argument. There was elaborate argument about what the scope of the claim meant. Yeah, but why don't you have to ask him to change his claim construction and to change the jury instruction? I don't think in light of how it went to trial that we have to do that, because the issue was clearly raised before the district judge in terms of what she was construing the scope of the claim to mean. There was briefing on it. You never said the claim construction was wrong. Well, we did say it was wrong to construe the claim the way Honeywell was then suggesting the construction should be construed. It's sort of a meta-construction issue, and that issue was clearly raised before the district judge. But you never asked for a formal claim construction that added this thing that you wanted added to it. No, we thought the language that she had already adopted was sufficient on that point, and the parties debated that with the district judge, and she ruled. Let me just make a couple of points. First on the Brewer case, Chief Judge Rader, I encourage the court to look at it. The compound in Brewer was tested at the request of the inventors. I have it at 25 to 27 of the opinion, and that's entirely consistent with the rule that we are proposing to this court. And the rule that we are proposing to this court is the rule this court generally applies when you ask the question, does a third party's reduction to practice flow to the benefit of someone else? On the point that Honeywell followed the instructions of the Russians, I mean, it's literally correct that the Russians sent instructions and Honeywell did it, but the Russians didn't instruct Honeywell to go do it. What Honeywell did was receive a report and went and did it, but it wasn't as if the Russians told them they had to go do it. Let me just end on a point that Mr. Ocasio hit a couple of times, the substantial evidence point. There would have been substantial evidence to support either jury verdict in this case. Experts on both sides testified as to anticipation and as to obviousness as to the 509 patent. He talked about Solvay's expert testified that it doesn't teach continuous reaction with this sort of starting material, that it shows it doesn't work. The jury could have reasonably found either way. This was a question of proof where Honeywell bore the burden by clear and convincing evidence and had the jury known that prior to litigation when they were seeking their own patent on a similar process, Honeywell had said exactly what Solvay was saying in the litigation, exactly what Solvay's expert said the references mean. The jury could very well have returned a different verdict. Isn't that a very clear indication that the judge did not abuse discretion, that this question about an unrelated patent would have controlled perhaps the outcome of a separate legal issue entirely, thus causing prejudice rather than probativeness? I disagree with that completely, Your Honor. This was highly relevant evidence outside of retained experts in litigation as to how a sophisticated party prosecuting their own patent in a similar circumstance read the key prior art reference that they then set at trial by clear and convincing evidence taught the opposite. There's no unfair prejudice in that. Rule 403 talks about unfair prejudice substantially outweighing the probative value. I agree there's prejudice to Honeywell's case, but that flows directly from the probative value and the district court abused its discretion in not letting the jury find out that Honeywell, when it suited their purpose in seeking their own patent, took exactly the opposite view of the reference and then when confronted in the litigation, retracted those comments. That would have been powerful evidence. There's nothing in 403 that should have been. Before a jury, that sort of allegations of prevarication are going to have devastating implications, can be very unfairly prejudicial in the wrong context. Isn't that really the judge's call? I don't believe it's unfairly prejudicial. Use of discretion. Correct, Your Honor. This was an abuse. I do, because the discretion is within legally prescribed bounds, and the prejudice that the rule contemplates is suggesting decision on an improper ground, such as racial antipathy or sympathy for a party or something unrelated to the probative value of the evidence. Well, it also talks about confusion. Correct. And this could be pretty confusing for the jury, couldn't it? I don't think it would be confusing at all, Your Honor. The evidence before the jury was about the teachings of this reference. I've looked at these statements. I mean, it takes a while to figure it out. I mean, there's no reference to drawing off the 245. There's only reference to drawing off the HCL. In the 192. Well, in Honeywell's comments about the 192. Well, correct, but they said, first of all, the evidence was undisputed at trial that if you're drawing off the HCL, you're also drawing off the 245 just because of how the chemistry works. Yeah, but that's the point. I mean, you've got to make a lot of connections here. It's not as though they said white is white or black is black. It's a little more complicated. I don't think it is, Your Honor, because they did say that the 192 patent teaches away from Salve's invention, the very 817 patent at issue in this case. I don't know that the other statements are especially difficult to understand, and that's why we have a trial to explain to the jury what the evidence shows in the parties. But this would have become the centerpiece of the trial, and it's an unrelated patent. Well, but, Your Honor, when the defendant, an infringer in a case, makes a statement that's directly contrary to their litigation position in prosecuting their own patent, it's always going to be an unrelated patent. And whether it became the centerpiece of the case is only due to the fact that it's directly contrary to the position that Honeywell was taking on an issue where they bore the burden by clearing convincing evidence. And so it strikes me that while there may be prejudicial to Honeywell's position, it's not unfair prejudice as contemplated by the rule. Your Honor, I see my time has run out. Thank you, Mr. Perlman. Thank you, Your Honor. Our last case.